UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| LOUIS J. PROVENZA | § | PLAINTIFF |
| | § | |
| v. | § | CAUSE NO. 1:09cv191-LG-RHW |
| | § | |
| JERRY J. STAMPS and TERESA L. | § | |
| "LYNN" WITT-STAMPS | § | DEFENDANTS |

## ORDER DENYING SECOND MOTION TO DISMISS

BEFORE THE COURT is Defendant Teresa L. "Lynn" Witt-Stamps's[1] Motion to Dismiss–Barred by Rule Against Claim Splitting [78]. Plaintiff Louis J. Provenza filed this diversity action based on an alleged conversion of funds that took place over a seven month period. She argues this case is barred by the rule against claim splitting. Provenza has not responded. The Court has considered her submissions and the relevant legal authority. The motion is denied.

## FACTS AND PROCEDURAL HISTORY

According to the Complaint, the Stamps were Provenza's bankruptcy attorneys, tax and business advisors, and friends. In January of 2005, the parties formed S&P Holdings, LLC, in order to develop Provenza's property known as the Caribe property, Lot 33, Sandestin, Florida. The Stamps were the only signatories on S&P's account. In March, the parties entered into an agreement in which the Stamps would buy the Caribe property from Provenza, mortgage it, construct a home on it, sell it, and then

---

[1]Although both Defendants filed the motion, Defendants Jerry J. Stamps has since died, and his estate has not yet been substituted.

divide the profits of that among the parties. Some of the purchase price that the Stamps owed Provenza for his Caribe property was to be deposited into S&P's account. The Stamps were supposed to use this amount ($392,955.50) to make payments on the mortgage that they had taken out on the property, until the house could be built and the property sold for profit.

Provenza alleges that, on July 1, 2005, the parties closed on this sale, and this amount was deposited into S&P's account. "[F]rom August 2005 through February 2006," however, the Stamps "fraudulently converted such proceeds to their personal use in increments." (Compl. at 3 (¶12)). He alleges that the Stamps "likewise secreted" another $546,000 from him, and argues this is proof of their fraudulent intent with respect to the $392,955.50. "Having initially been informed that the Defendants were using the $392,955.50 to pay the mortgage debt service, the Plaintiff only learned at Defendants' deposition in a Florida case that the Defendants had converted the $392,955.50 to their own use." *Id.* at 3-4 (¶16). The Complaint sets forth various tort claims as well as breach of contract and unjust enrichment. In this action, Provenza seeks recovery of the $392,955.50, among other things.

The Complaint was filed in 2009. The Stamps filed an Answer on April 28, 2009, and a Counterclaim on January 12, 2010. Although both referred to the Florida case, neither raised the defense now before the Court.

The Florida case is a pending action filed by Provenza against the Stamps in Florida state court in 2007. That action concerns both the Caribe property and a condominium known as 4064 Beachside One Drive, Unit 4064, Miramar Beach,

2

Florida. The complaint[2] alleges that in 2005 (February 22, according to the second amended complaint) the parties entered a contract for sale of the Beachside One property from Provenza to the Stamps. He alleges the Stamps owe him $117,000 for this sale, which they never paid. In 2005 (March 12, according to the second amended complaint) the parties entered the contract for sale of the Caribe property. The Stamps were supposed to tender $546,000 as part of the purchase price, which they never did. Further, they falsely represented that they would form a joint venture with him to develop the Caribe property. They were supposed to use funds to develop the property but instead used those funds for their own personal use. Provenza seeks recovery of the $546,000, among other things. The Stamps filed a motion to dismiss the Florida action on claim splitting grounds in 2009. The present motion in this case was filed a year later.

## DISCUSSION

Witt-Stamps argues that the rule against claim splitting bars this action because there is a related pending action in state court.

Res judicata protects against claim splitting. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 589 (5th Cir. 2006). "Res judicata bars claims in a second lawsuit that were

---

[2]The Court has been presented with documents Witt-Stamps purports to be the Complaint, First Amended Complaint, Second Amended Complaint, and partial court docket sheet from the Florida case. Only the Complaint is file-stamped. The First Amended Complaint was never filed. It is marked as "Exhibit A to Plaintiff's Motion for Leave to Amend." (Def.'s 2d Mot. Dismiss Ex. A at 29). This motion was never granted but was followed shortly by a Motion for Leave to Amend using the Second Amended Complaint. The docket does not show that the Second Amended Complaint was ever filed, but there is an Answer to Second Amended Complaint.

not actually litigated in the first lawsuit unless they "'could and should' have been brought in the earlier suit." *Super Van, Inc. v. City of San Antonio*, 92 F.3d 366, 370 (5th Cir. 1996) (quoting *Matter of Howe*, 913 F.2d 1138, 1145 (5th Cir. 1990)). "A main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim." *Super Van*, 92 F.3d at 371. Res judicata requires a final judgment. *Id.* at 370. Further, the court is required to apply the res judicata law from the jurisdiction which rendered the prior judgment. *Black*, 461 F.3d at 588; *Matter of Hansler*, 988 F.2d 35, 37 (5th Cir. 1993).

There has been no final judgment in the Florida action nor in this action. Res judicata therefore does not apply. Further, at this juncture it is not clear if the federal or Florida rules of res judicata would apply to bar either this or the Florida action.

The Fifth Circuit has in limited circumstances applied the claim splitting rule in cases where there was no final judgment. *Friends of the Earth, Inc. v. Crown Cent. Petroleum, Corp.*, 95 F.3d 358 (5th Cir. 1996); *Oliney v. Gardner*, 771 F.2d 856 (5th Cir. 1985). For example, in *Oliney*, there were two simultaneous actions filed in the same court, the Eastern District of Louisiana. *Id.* at 857. At the time the first was filed, there was not complete diversity of citizenship. *Id.* A motion to dismiss was therefore filed in the first action. *Id.* Before the motion was ruled upon, the plaintiff filed the exact action again in that court, because at that time, there was diversity. *Id.* at 859. The plaintiff, however, violated the local court rule and did not inform the district court of the identical prior filed action. *Id.* The district court treated the second action as

4

an amendment of the first, "which would therefore relate back to the original filing in that suit where diversity of citizenship did not exist." *Id.* at 858. The Fifth Circuit held that plaintiff "had no right to maintain two separate actions involving the same subject matter at the same time in the *same court* and against the same defendant." *Id.* at 859 (emphasis added). In the next sentence, however, the court said that such a case "may" be dismissed. *Id.* The plaintiff filed "duplicative complaints to expand the procedural rights he would otherwise enjoy–particularly for the purpose of circumventing the rules pertaining to the amendment of complaints." *Id.* The plaintiff sought to avoid the relation back of his amendment to the jurisdiction as it existed on the day the first case was filed. *Id.* The correct procedure would have been to wait until the first action was dismissed and then to file the second complaint. *Id.*

Citing *Oliney*, the Fifth Circuit affirmed dismissal of a second duplicative suit that was again filed in the same court. *Friends of the Earth*, 95 F.3d at 362. A citizen suit under the Clean Water Act was filed in the Eastern District of Texas. *Id.* at 359. A motion was filed challenging standing. *Id.* at 360. The plaintiff refiled the suit before the same court while the first one was pending. *Id.* The district court dismissed the second action as "duplicative." *Id.* at 362. The Fifth Circuit affirmed, holding, "When a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint *may* be dismissed." *Id.* at 362 (quoting *Oliney*, 771 F.2d at 859) (emphasis added). The court found that the second complaint was filed solely to avoid the rules pertaining to the amendment of the complaint in the

5

first action, in which there was no standing. *Friends of the Earth*, 95 F.3d at 362.

The Northern District of Mississippi has previously distinguished *Oliney* and *Friends of the Earth*. *James v. United States*, No. 3:05cv134-P-A, 2006 U.S. Dist. LEXIS 47602 (July 12, 2006). The court noted that the rule in *Oliney* and *Friends* was permissive only, and did not require that the court dismiss the action. *Id.* at *4. Further, the plaintiff in that case did not file her second case to expand her procedural rights. *Id.* In that case the first action was filed prematurely, before the plaintiff had exhausted her administrative remedies. *Id.* at *2. It was therefore dismissed without prejudice. *Id.* While the first action was pending, she filed a second one, this time having satisfied exhaustion. *Id.* Therefore the filing of the second action was not precluded by the first.

This action is also distinguishable from *Oliney* and *Friends of the Earth*. This action does not involve the same case, filed twice, and pending simultaneously before the *same court*. The case is not an attempt to expand procedural rights or to avoid relation back of an amendment in the other lawsuit. Rather it involves parallel actions in two different courts with concurrent jurisdiction. "[C]oncurrent state and federal proceedings are generally tolerated." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 371 (5th Cir. 1995). "Furthermore, to complain of the costs arising out of concurrent litigation in separate jurisdictions is to complain generally of federalism, which suffers inefficiencies and multiplicity for its own sake." *Id.* Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, and "the

6

pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976).

The rule against claim splitting does not bar this action.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above Defendant Teresa L. "Lynn" Witt-Stamps's [78] Motion to Dismiss–Barred by Rule Against Claim Splitting should be and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED** this the 1st day of February, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE